Filed 8/16/24  P. v. Locke CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D083244 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD160776) |
| MARVIN K. LOCKE, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, David M. Gill, Judge.  Affirmed.

Laura Vavakin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa A. Mandel, Seth M. Friedman and Joseph C. Anagnos, Deputy Attorneys General, for Plaintiff and Respondent.

MEMORANDUM OPINION

Marvin K. Locke appeals from the trial court's order denying his Penal Code section 1172.6[1] petition for vacatur and resentencing on his 2002 second degree murder conviction. We conclude the court properly denied his petition at the prima facie stage and affirm.

BACKGROUND[2]

In May 1999, 22-year-old Fred Jones threw up a Crips gang sign in the presence of a group of Bloods. As a result, Jones was fatally shot twice in the back with a .38 caliber handgun. Locke, a self-identified member of the Lincoln Park Bloods, admitted in a videotaped police interview that he shot Jones.

In December 2002, a jury convicted Locke of second-degree murder (§ 187, subd. (a); count 1) and assault with a firearm (§ 245, subd. (a)(2); count 2).[3] The jury also found true that Locke "intentionally and personally discharged a firearm . . . and proximately caused great bodily injury and death" in the commission of count 1 (§ 12022.53, subd. (d)).[4] Locke was sentenced to a total prison term of 41 years to life.

---

[1] Further undesignated statutory references are to the Penal Code.

[2] For context only, we provide a brief summary of the factual background from our unpublished opinion affirming Locke's convictions. (*People v. Locke* (Apr. 20, 2004, D042063) [nonpub. opn.] (*Locke*).) We do not rely on the prior opinion to determine if Locke made a prima facie showing.

[3] Codefendant Jonathan Wayne McKinley, who was tried separately, was also charged with counts 1 and 2 and alleged to have been "armed with a firearm" in the commission of count 1 (§ 12022, subd. (a)(1)).

[4] As to count 1, the jury also found true the allegations that Locke personally used a firearm (§§ 12022.53, subd. (b); 12022.5, subd. (a)(1)); intentionally and personally discharged a firearm (§ 12022.53, subd. (c)); and

In his 2004 direct appeal, we affirmed the judgment of convictions, rejecting Locke's contentions that his statements to the police were taken in violation of his Sixth Amendment right to counsel.

In July 2021, Locke filed a pro se form petition to vacate his murder conviction and be resentenced pursuant to former section 1170.95 (now section 1172.6).[5] In opposition, the People provided the trial court with "the readily available record of conviction," including the indictment, verdicts, two minute orders, the abstract of judgment, a slightly different version of Locke's petition,[6] and this court's prior opinion in *Locke, supra,* D042063. The People argued the verdicts, specifically the jury's true finding that Locke

---

committed the murder for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)).

[5] The form petition checked none of the boxes, including the statutory criteria for resentencing eligibility, and at the prima facie hearing, the People argued Locke's petition was facially deficient. Locke's appointed counsel stated she believed a second petition "had, at some point, made its way to the [c]ourt" and requested the trial court treat the petition as "complete." No second petition was found after a diligent search of the Superior Court file. We nonetheless exercise our discretion to reach the merits of Locke's appeal despite the facial defects of his petition because the Attorney General does not contend the incomplete petition forecloses Locke's appeal. This moots Locke's alternative argument his counsel provided ineffective assistance of counsel for not directing him to file a new, complete petition prior to the court's ruling.

[6] In this unfiled petition received by the People, Locke checked box 2b that he pled guilty to first or second degree murder in lieu of going to trial because he believed he could have been convicted of first or second degree murder at trial pursuant to the felony murder rule or the natural and probable consequences doctrine, and box 6 that he was convicted of second degree murder under the natural and probable consequences doctrine or under the second degree felony murder doctrine.

3

intentionally and personally used a firearm proximately causing death, conclusively established he was found to be the actual killer, making him ineligible for relief as a matter of law.

The trial court agreed with the People that the jury verdicts and the indictment "alone" established Locke was the actual killer. Notably, the court was not provided the jury instructions given at Locke's trial. The court summarily denied the petition having found Locke failed to make prima facie showing of eligibility.

DISCUSSION

Locke contends the trial court erred. He asserts the record of conviction before the court, namely the jury's true finding on the section 12022.53, subdivision (d) allegation, did not conclusively establish he was the actual killer. But even if the actual killer, he asserts absent the jury instructions it cannot be conclusively ruled out that he was convicted under a second degree felony-murder theory or the natural and probable consequences doctrine. Our review is de novo. (*People v. Harden* (2022) 81 Cal.App.5th 45, 52 (*Harden*).)

Along with its respondent's brief, the Attorney General filed a request that we take judicial notice of the jury instructions and the reporter's transcript of the reading of those instructions and closing arguments at Locke's trial. These records are contained in this court's appellate record from Locke's direct appeal in Case No. D042063. Locke opposes the request, asserting we should not consider the instructions for the first time on appeal. We grant the Attorney General's request for judicial notice in its entirety.

Appellate courts may take judicial notice of the records of their own cases under Evidence Code sections 452, subdivision (d), and 459. (See e.g., *People v. Bilbrey* (2018) 25 Cal.App.5th 764, 769, fn. 7 [taking judicial notice

4

of the appellate record in a related petition for writ of mandate in appeal from grant of petition for habeas corpus and motion to dismiss information on speedy trial grounds]; *People v. McCarthy* (2016) 244 Cal.App.4th 1096, 1100, fn. 2 [granting the People's and defendant's requests to take judicial notice of its records in prior appeal]; *In re Wright* (2005) 128 Cal.App.4th 663, 669 [at request of both parties, taking judicial notice of record from defendant's prior appeal in habeas corpus proceedings].)

The jury instructions and the reporter's transcripts from Locke's trial are part of this court's appellate record from his prior appeal. They also constitute part of the record of conviction that may properly be considered in determining whether a petitioner has made a prima facie case for section 1172.6 relief. (See *People v. Jenkins* (2021) 70 Cal.App.5th 924, 935; *People v. Soto* (2020) 51 Cal.App.5th 1043, 1055 ["the trial court here could rely on the jury instructions, which are part of the record of conviction, in assessing the prima facie showings"].) And because our review is de novo, it is appropriate that we consider the comprehensive record of conviction before us, even if it was not available to the trial court. (See *Jenkins*, at p. 935 [appellate court considered charging document, verdict forms, closing arguments, and jury instructions, "[w]hile the trial court had only the [prior appellate] opinion before it," to reverse a summary denial of a § 1172.6 petition].)

Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) altered the substantive law of murder by significantly narrowing the felony murder rule. It added section 189, subdivision (e), to provide that a defendant is liable for felony murder only if the People prove he (1) was the actual killer; (2) was not the actual killer but, with the intent to kill, acted as a direct aider and abettor; or (3) was a major participant in the underlying felony and acted with reckless indifference to human life. (§ 189, subd. (e); see *People v. Curiel*

5

(2023) 15 Cal.5th 433, 448 (*Curiel*).) Senate Bill 1437 also added subdivision (a)(3) to section 188, imposing a new requirement that, except in cases of felony murder, "a principal in a crime shall act with malice aforethought" to be convicted of murder. (§ 188, subd. (a)(3); *Curiel*, at p. 449.) "Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3); see *Curiel*, at p. 449.) This effectively eliminated liability for murder as an aider and abettor under the natural and probable consequences doctrine. (*Curiel*, at p. 449.)

A defendant convicted of murder under prior law can seek retroactive application of amended sections 188 and 189 by filing a petition pursuant to section 1172.6. Section 1172.6, subdivision (a), provides: "A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, . . . may file a petition with the [sentencing] court . . . to have the petitioner's murder . . . conviction vacated and to be resentenced on any remaining counts[.]" The petition must contain a declaration that all requirements for eligibility are met.[7]

Upon receiving a petition that contains all the required information, the trial court must appoint counsel to represent the petitioner if one is

---

[7] The requirements are (1) "A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder[ or] murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime . . . ."; (2) "The petitioner was convicted of murder . . . following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder . . . ."; and (3) "The petitioner could not presently be convicted of murder . . . because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(1)–(3).)

6

requested. (§ 1172.6, subd. (b)(3); *People v. Lewis* (2021) 11 Cal.5th 952, 963 (*Lewis*).) If, after the parties have had an opportunity to submit briefings, the court determines the petitioner has made a prima facie case for relief (§ 1172.6, subd. (c)), it must issue an order to show cause and conduct an evidentiary hearing (§ 1172.6, subds. (c) & (d)(1)).

Although this prima facie inquiry is "limited" and the trial court takes the petitioner's factual allegations as true and refrains from factfinding involving the weighing of evidence or the exercise of discretion, "the trial court may look at the record of conviction" to "distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, *supra*, 11 Cal.5th at pp. 971, 972.) " 'If the petition and record in the case establish *conclusively* that the [petitioner] is ineligible for relief, the trial court may dismiss the petition' " at the prima facie stage. (*Curiel, supra*, 15 Cal.5th at p. 450, italics added.) For example, if a review of the court file shows the petitioner was convicted of murder *without instruction or argument* based on the felony murder rule or the natural and probable consequences doctrine or any theory of imputed malice, it would be entirely appropriate to summarily deny the petition based on the petitioner's failure to establish a prima facie basis of eligibility for resentencing. That is the case here.

Locke's jury was not instructed on the felony murder rule, the natural and probable consequences doctrine, or any other theory of imputed malice. The trial court instructed the jury that murder is the unlawful killing of a human being with malice aforethought (CALJIC 8.10) and that malice aforethought may be either express (a manifest intent to kill) or implied (a conscious disregard for human life) (CALJIC 8.11). It instructed the jury that first degree murder required deliberation and premeditation, a theory

7

rejected by the jury. It instructed the jury on two theories of second degree murder: express malice murder and implied malice murder.

In closing arguments, the prosecutor argued Locke "deci[ded] to shoot and kill," then fatally "shot him [twice] in the back" on a street corner. Consistent with the jury instructions, the prosecutor argued that if the jury found insufficient evidence of deliberation and premeditation to support a first degree murder conviction, it should convict Locke of second degree murder based on his own intent to kill or his own conscious disregard for human life.

Consequently, the jury's verdict convicting Locke of second degree murder was based only on a theory Locke acted with malice aforethought, whether express or implied. (§ 188, subd. (a)(3); see *People v. Schell* (2022) 84 Cal.App.5th 437, 442 [second degree implied malice murder remains valid notwithstanding Senate Bill 1437].) He is thus ineligible for resentencing as a matter of law because section 1172.6 "applies only where the murder conviction is based on felony murder, or the natural and probable consequences doctrine, or any other theory under which malice is imputed based on a person's participation in a crime." (*Harden, supra*, 81 Cal.App.5th at p. 53.) On this basis alone, we affirm the trial court's denial of the petition.[8] (*Id.* at p. 60, fn. 13 [" ' " 'If the ruling was correct on any ground, we affirm.' " ' "].)

---

[8] In light of our determination, we do not need to reach the trial court's additional finding that Locke, as the actual killer, was convicted under a still valid theory of murder.

## DISPOSITION

The trial court's December 5, 2023 order denying Locke's petition for resentencing pursuant to section 1172.6 is affirmed.

DO, Acting P. J.

WE CONCUR:

BUCHANAN, J.

RUBIN, J.

9